IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ROBERT NOBLE,

                Plaintiff,

     v.

CITY OF CAMDEN, OFFICER JEFFREY
W. FRAMPTON, OFFICER
CHRISTOPHER FRUCCI, OFFICER
JOHN DOE

              Defendants.

HONORABLE JEROME B. SIMANDLE

Civil No. 13-4391 (JBS/AMD)

**OPINION**

APPEARANCES:

Gabriel Z. Levin, Esq.
LEVIN & ZEIGER LLP
123 South Broad Street, Suite 1200
Philadelphia, PA 19109
    Attorney for Plaintiff

Daniel E. Rybeck, Esq.
John C. Eastlack, Jr., Esq.
WEIR & PARTNERS LLP
The Liberty View Building
457 Haddonfield Road, Suite 310
Cherry Hill, NJ 08002
    Attorneys for Defendants City of Camden and Officer Jeffrey
    W. Frampton

James H. Waller, Esq.
611 White Horse Pike
Haddon Heights, NJ 08035
    Attorney for Defendant Officer Christopher Frucci

**SIMANDLE**, Chief Judge:

I.  **INTRODUCTION**

    This case is about Plaintiff Robert Noble's encounter, one

evening in January 2012, with several members of the Camden Police Department, which began when Defendant Christopher Frucci approached Plaintiff as Plaintiff was taking a nap in his car. A scuffle ensued with Frucci and Defendant Officer Jeffrey Frampton, and Plaintiff was brought directly to the hospital after the encounter for medical treatment. He suffered a fractured rib, bruises, and abrasions as a result of being punched and kicked by the officers. Plaintiff was charged with aggravated assault and resisting arrest, but the charges were later dropped.

Plaintiff filed this suit under 42 U.S.C. § 1983, alleging Fourth Amendment violations of excessive force, false arrest, and malicious prosecution, and various state tort claims against Frucci and Frampton, as well as Monell claims against the City of Camden for having a policy or custom of using excessive force, and for failing to train and supervise its officers on the appropriate use of force. Presently before the Court are summary judgment motions by the City of Camden and Officer Jeffrey Frampton [Docket Item 24], and Officer Christopher Frucci [Docket Item 22].

Certain key facts in this case are contested. Defendants contend that during the encounter, Plaintiff shoved Frampton in the chest and resisted when Defendants then tried to arrest him

for assault. They argue that in the ensuing scuffle, Frampton and Frucci struck and punched Plaintiff a few times in the knee, arm, and face. Plaintiff contends that he made no move against either officer and that he was punched and kicked by at least four officers repeatedly for five minutes or more while he was restrained.

Notwithstanding the factual dispute, Frampton and Frucci seek to dismiss the Fourth Amendment claims against them, arguing that their use of force against Plaintiff was objectively reasonable under the circumstances; that they had probable cause to arrest Plaintiff because Plaintiff shoved Frampton; and that they are shielded by qualified immunity. They also argue that Plaintiff's state tort claims must be dismissed because Plaintiff failed to file a notice of claim as required by the New Jersey Tort Claims Act. N.J.S.A. 59:8-8.

The City of Camden seeks dismissal of the Monell claims, arguing that there is no evidence of a policy or custom of using excessive force, nor any evidence of improper training or supervision.

For the reasons set forth below, the Court will deny summary judgment on Plaintiff's Fourth Amendment claims against Frampton and Frucci and the Monell claim against the City of Camden for failing to investigate the use of excessive force.

3

The Court will grant summary judgment on all other claims.

**II.  BACKGROUND**

**A. Summary Judgment Record**

The Court begins with the summary judgment record.[1] After finishing work on a private residence on the evening of January 26, 2012, Plaintiff Robert Noble, a self-employed remodeler of residential homes, drove his part-time assistant, Adam Lee, home to Mr. Lee's residence on Norris Street in Camden, New Jersey. At about 6:30 p.m., after dropping Mr. Lee off, Plaintiff parked his car on Norris Street to take a nap before driving home. (Def. Statement of Material Facts ("SMF") [Docket Item 21] ¶¶ 7-12.)

At around the same time, members of the Camden Police Department were in the area assisting New Jersey state parole officers with home visits of parolees. Defendants Officer

---

[1] Pursuant to Local Civil Rule 56.1, Defendants City of Camden and Officer Frampton filed a statement of material facts along with their motion for summary judgment. (City of Camden and Frampton Br. [Docket Item 21] at 1-8.) Defendant Officer Frucci joins in the City of Camden and Officer Frampton's statement of facts in his motion for summary judgment. (Frucci Br. [Docket Item 22] at 3.) As Plaintiff did not file a supplemental statement of facts, the Court relied primarily on Defendants' statement of material facts and Plaintiff's responsive statement. The Court also found it necessary to include additional facts and testimony from the summary judgment record in order to present a fuller record from which to decide the pending motions.

Jeffrey Frampton and Officer Christopher Frucci were among the officers providing assistance. Frampton and Frucci were wearing plain clothes with either sweatshirts or vests that said "POLICE" across the chest. (Dep. of Christopher Frucci ("Frucci Dep.") [Docket Item 21] 47:16-48:13; SMF ¶¶ 15-16.) Plaintiff asserts that they were also wearing black ski masks that obscured the entire face except for the eyes. (Dep. of Robert Noble ("Noble Dep.") [Docket Item 24] 49:15-50:3.)

While Frampton and Frucci were securing the outside of one home on Norris Street, Frucci noticed Plaintiff's truck parked on the corner of Morton and Norris Street. (Frucci Dep. 42:22-43:3.) According to Frucci, the corner of Morton and Norris is a "high crime, high drug, high gun, violent area." (Frucci Dep. 41:22-24.) Frucci approached the truck to investigate.

The following facts are in dispute. According to Defendants, Frucci states that he saw Plaintiff "laid back" in the driver's seat, not in an upright, driving position. (Frucci Dep. 44:6-20.) He shined his flashlight into the truck, banged on the window, and said, in sum and substance, "Hey, what's going on? Are you okay?" (Id. 45:25-46:21.) According to Frucci, once Plaintiff awoke, he "was immediately belligerent and angry" and was "moving real fast and aggressive in the car." (Id. 49:6-10.) Frucci alleges that he then identified himself as "Camden

Police," told Plaintiff to "calm down," and asked Plaintiff if
he was all right. Plaintiff responded by becoming more
belligerent and telling Frucci to "get that f****** light out of
my face." (Id. 49:15-21; Frampton Dep. 41:4-7.) Frucci continued
to train his flashlight on Plaintiff, but claims that he
specifically did not shine the flashlight in Plaintiff's face.
(Frucci Dep. 52:23-53:2.)

According to Frucci, Plaintiff then "aggressively came out
of the car," "screaming belligerently, hands in the air flailing
around." (Frucci Dep. 54:12-17.) Frampton testified at
deposition that Frucci asked Plaintiff to get out of the car,
but Frucci testified that he never asked Plaintiff to get out.
(Compare Frampton Dep. 42:22-25 with Frucci Dep. 53:18-20.)
Frampton then walked over to where Plaintiff and Frucci were
standing. Both officers yelled at Plaintiff "numerous times" to
calm down. (Frampton Dep. 49:19-50:15.) According to both
Frampton and Frucci, Plaintiff then shoved Frampton in the chest
with both hands. (Frucci Dep. 55:2-7, 61:15-25; Frampton Dep.
45:12-14; 47:16-18.) Defendants then tried to place Plaintiff
under arrest for assault. (Frucci Dep. 62:6-9; Frampton Dep.
57:1-2.)

Frampton and Frucci attempted to handcuff Plaintiff but
Plaintiff fought the officers, so Frampton grabbed Plaintiff by

6

the legs and "took him to the ground." (Frampton Dep. 57:6-10; 61:21-62:9.) Plaintiff fell face first and landed on his stomach. (Frampton Dep. 64:22-65:3.) Plaintiff had his arms underneath his body and kept resisting when Defendants tried to pull his arms out to handcuff him. (Frampton Dep. 66:23-67:6.) Defendants told Plaintiff that he was under arrest and yelled at Plaintiff to "stop resisting," and "give me your hands. I'm trying to handcuff you." (Frucci Dep. 65:4-6.; Frampton Dep. 65:24-66:3.) According to Defendants, during the struggle on the ground which lasted approximately 30 seconds, Frampton punched Plaintiff's face twice (Frampton Dep. 67:15-21; 68:8-19), and Frucci kneed Plaintiff three to five times in the rib or shoulder plexus area and thigh, and punched Plaintiff's arm and leg three to five times. (Frucci Dep. 65:10-66:17.) Frampton and Frucci were then able to get Plaintiff's arm out and handcuff him. (Frampton Dep. 68:8-19.)

Frucci testified that other officers came over when they heard the altercation, but only he and Frampton were involved in the physical struggle with Plaintiff. (Frucci Dep. 68:21-69:16.)

By contrast, Plaintiff alleges that he was taking a nap in his truck with his dog when he was awoken by the sound of someone opening and shutting his passenger side door. (Noble Dep. 37:19-25.) He noticed two flashlights and a gun outside the

7

window of his truck and was initially disoriented. (Id. 44:8-
45:6.) Plaintiff then heard two people repeatedly say, "Out of
the truck, mother f******." (Id. 45:9-16.) Plaintiff rolled down
his window and asked who they were, but they did not identify
themselves and Plaintiff did not hear either of them say that
they were police. (Id. 48:21-49:8.) The two officers continued
to yell at Plaintiff to "get out of the truck." (Id. 51:15-18.)
Plaintiff told the officers that he was getting out of his truck
slowly. He opened the door and stepped out of his car with his
hands in the air. (Id. 52:15-17; 53:23-54:1.)

Plaintiff testified at deposition that he repeatedly asked
the men to identify themselves but they refused to do so and
instead continued to yell at Plaintiff. He was not certain that
they were police officers because they had no visible badge and
the front of their clothing was obscured by the flashlights and
gun. (Noble Dep. 50:4-16; 54:21-55:5; 55:25-56:3.). According to
Plaintiff, Defendant Frampton then said, "You get cocky with me,
mother*****, I'll kick your a**." (Id. 56:9-20; 58:5-9.)
Frampton approached Plaintiff while Plaintiff had his hands up
in the air. As Frampton approached, Plaintiff turned to face the
door of his truck, and Frampton grabbed one arm and twisted it.
Frucci approached Plaintiff from the other side and "ran right
into [Plaintiff]" in a "piledrive" and grabbed Plaintiff's other

8

arm. (Id. 59:25-61:7.) Plaintiff denies shoving or punching Frampton and testified that he was not resisting arrest. (Noble Dep. 114:17-22; 141:24-142:3.)

Plaintiff testified that while his arms were being restrained, he was hit in the back from behind by at least two other officers and felt a nightstick being poked into his back. (Noble Dep. 65:5-23.) Frampton and Frucci were holding Plaintiff by his forearms and had Plaintiff nearly off the ground. (Id. 67:2-68:7.) At some point, Plaintiff's head was smashed into his truck and Frampton punched him in the face four or five times. (Id. 69:5-7; 70:6-14.) He was also repeatedly kicked in the legs as officers continued to punch him. Plaintiff testified that this went on for about five minutes. (Id. 73:23-74:8; 77:7-10.) He was unarmed and asserts that he was not resisting arrest. (Id. 71:21-25.)

At some point during this beating, Plaintiff realized that he had handcuffs "on both of [his] hands." (Noble Dep. 76:25-77:1.) He recalled that he was then "slammed [] into the street" and that the four or so police officers, including Frampton and Frucci, kicked him and stood on his head, stomach, ribs, back, hands, and feet, while he was lying on the ground on his side. (Id. 77:2-6.) Plaintiff estimates that he was kicked approximately 20 times. (Id. 81:8-10.) He also testified that a

9

number of people on the street witnessed the assault, and that one man told Plaintiff that he videotaped the encounter. (Noble Dep.82:17-83:4; 138: 12-139:25.)

Plaintiff nearly lost consciousness during this time. (Noble Dep. 82:7-16.) The beating stopped when he heard an officer say, "I think we're killing him." Officers pulled Plaintiff off the ground and placed him into the back of a police car. (Id. 83:20-25; 84:8-25.) Frampton and Frucci drove him to Virtua Hospital for treatment. (Id. 89:7014.)

Plaintiff stated at deposition that he suffered a fracture in one of his ribs and sustained some bruises, cuts, and abrasions. (Noble Dep. 170:13-171:4.)[2]

After being discharged from the hospital, Plaintiff was taken to the police administration building where he was questioned for approximately 45 minutes by Frampton. (Noble Dep. 121:14-16.) After Plaintiff was given a copy of the charges against him, Frampton and Frucci drove him back to his truck, which was still parked on Norris Street. Plaintiff was released on his own recognizance and no bail was ever set. (Id. 123:15-

---

[2] The summary judgment record does not include any medical records detailing Plaintiff's injury or the treatment he received. Plaintiff testified at other times that the encounter left him with broken ribs, but then answered in the affirmative when asked whether he actually suffered a single rib fracture. (Noble Dep. 170:13-171:4.)

124:20.) Plaintiff was charged with aggravated assault and resisting arrest, but the charges were subsequently dismissed. (Noble Dep. 142:21-23.)

Plaintiff testified at deposition that his bruises and cuts have since healed, but that he continues to have pain in his left and right shoulders and cannot move his left arm above his head. (Noble Dep. 170:13-14; 168:19-169:20.)

Expert Report[3]

Plaintiff submitted a 13-page expert report from Richard Rivera, a retired municipal police officer and consultant in police practices, policy, procedures, and training. (Rivera Report [Docket Item 24].) According to Mr. Rivera, Frucci and Frampton escalated the confrontation with Plaintiff by shouting at Plaintiff, invading his private space, and failing to communicate clearly with each other and with Plaintiff. (Rivera

---

[3] Although Plaintiff alleges Monell claims against the City of Camden for acquiescing to a custom of excessive force and failing to train and supervise officers on the use of force, Plaintiff failed to include facts related to these claims in a supplemental statement of facts and referred to facts in the expert report only in his opposition brief, in contrast to what Local R. 56.1 requires. See Loc. Civ. R. 56.1(a) ("[T]he opponent may also furnish a supplemental statement of disputed material facts . . . if necessary to substantiate the factual basis for opposition."). The Court has examined the expert report and, finding it necessary to consider the expert opinion of Dr. Rivera in order to fully address all claims raised in the complaint, recites those facts it deems relevant here.

Report at 6-7.) Mr. Rivera opined that "it was [Defendants'] inability to verbally communicate with [Plaintiff] in the first place that led to their use of force and arrest of [Plaintiff]," and that the force used by Defendants was "excessive and avoidable." (Id. at 7.)

Mr. Rivera also reviewed discovery records and records from the Camden Police Department Internal Affairs Unit ("IAU"). (Rivera Report at 3.) He noted that the IAU investigated few complaints of excessive force in 2001 and 2002. In 2001, the IAU had 128 pending cases of excessive force and investigated only 11 cases. In 2002, the IAU investigated only six allegations of excessive force out of 174 pending cases. (Id. at 9.) Between 2001 and 2007, the Police Department received a total of 485 allegations of excessive force and only two complaints were sustained as rule violations. (Id. at 9.) Mr. Rivera also noted that the IAU suffered from a severe backlog of cases. A 2009 audit revealed that the unit still had 227 open cases dating as far back as 2002. (Id. at 9.)

Mr. Rivera opined that the lack of timely IAU investigations contributed to officer misconduct. (Rivera Report at 9.) He noted that a total of 19 excessive force complaints had been lodged against Frampton and Frucci, and opined that the officers should have been removed from public contact given the

frequent number of complaints against them. (Id. at 9-10.) He also noted that the Police Department "was aware of the backlogs and established an early warning system to flag unwanted behavior" but nonetheless failed to act in a timely manner to investigate complaints and prevent misconduct by officers. (Id. at 9.) Frampton and Frucci were among ten officers in 2004 and 2005 who were flagged by the early warning system for monitoring and supervision, and Frampton was flagged again in 2006. (Id. at 12.)

Mr. Rivera concluded that the internal affairs unit was "inept in investigating serious allegations of misconduct including force incidents and overwhelmed to the point that officers with multiple open investigations were allowed to continue contact with the community." (Id. at 8.)

**B. Procedural Background**

Plaintiff Robert Noble filed this Complaint on July 19, 2013 against Defendants the City of Camden, Jeffrey Frampton, Christopher Frucci, and unnamed John Doe officers. [Docket Item 1.] Plaintiff asserts claims against Frampton, Frucci, and John Doe police officers under 42 U.S.C § 1983 for excessive use of force (Count One), false arrest (Count Two), and malicious prosecution (Count Three), in violation of the Fourth Amendment; as well as state law claims for assault and battery (Count Six),

13

false imprisonment (Count Seven), false arrest (Count Eight), malicious prosecution (Count Nine), and conspiracy (Count Ten). Plaintiff also asserts Monell claims under 42 U.S.C. § 1983 against the City of Camden for various "constitutional deprivations caused by inadequate policies, procedures, and customs" (Count Four), failure to train, and failure to supervise (Count Five).

Following the close of discovery, Defendants moved for summary judgment. [Docket Items 21 and 22.] The City of Camden argues that the Monell claims cannot be sustained because Mr. Rivera's report does not include any specifics about prior complaints against Frampton or Frucci, and Plaintiff cannot demonstrate a pattern of excessive force because he has not shown how previous incidents were similar to the incident in this case. (Def. Reply [Docket Item 26] at 5-6.)

Frampton and Frucci argue that they are entitled to qualified immunity. (City of Camden and Frampton Br. [Docket Item 21] at 14-16; Frucci Br. [Docket Item 22] at 5-6.) They also argue that Plaintiff has not shown a Fourth Amendment excessive force violation because the force used was objectively reasonable, and that Plaintiff has not demonstrated Fourth Amendment violations for malicious prosecution and false arrest because Defendants had probable cause to arrest and charge

14

Plaintiff based on "the plethora of activity Plaintiff engaged
in . . . up to and including the point wherein he shoved Lt.
Frampton prior to being handcuffed." (Def. Reply at 8; City of
Camden and Frampton Br. at 16-17; Frucci Br. 6-8.)[4] Finally, they
argue that Plaintiff's state law claims must dismissed because
Plaintiff failed to file a notice of claim prior to filing suit,
as required under the New Jersey Tort Claims Act. N.J.S.A. 59:8-
8. (City of Camden and Frampton Br. at 18-21; Frucci Br. at 8.)

Plaintiff argues that summary judgment must be denied
because Defendants' 56.1(a) statement included facts that were
disputed. With respect to the Monell claims, Plaintiff argues
that Mr. Rivera's expert report sufficiently demonstrates that
Frampton and Frucci exhibited a pattern of excessive force that
was ignored by the IAU. (Pl. Opp'n to City of Camden and
Frampton [Docket Item 24] at 9-10.) With respect to the
individual Fourth Amendment claims, Plaintiff contends that
qualified immunity does not protect officers who intentionally
and maliciously violated Plaintiff's Fourth Amendment rights,
and that factual disputes surrounding the use of force and the
circumstances of Plaintiff's arrest prevent summary judgment on
those claims. (Id. at 10-15; Pl. Opp'n to Frucci [Docket Item

---

[4] Defendant Frucci makes no argument with respect to Plaintiff's
malicious prosecution claim.

25] at 2-6.) With respect to the state law claims, Plaintiff argues that the New Jersey Tort Claims Act does not provide protection for misconduct that is intentional, malicious, and willful. (Pl. Opp'n to City of Camden and Frampton at 16; Pl. Opp'n to Frucci at 6.)

## III. STANDARD OF REVIEW

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. Hunt v. Cromartie, 526 U.S. 541, 552 (1999); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a

16

verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The non-moving party "'need not match, item for item, each piece of evidence proffered by the movant,'" but must simply present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cnty. of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson v. Liberty Libby, Inc., 477 U.S. 242, 252 (1986)). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," no genuine issue for trial exists and summary judgment shall be granted. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

The Court exercises subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and exercises supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## IV. DISCUSSION

### A. Defendants' Rule 56.1 Statement

Local Rule 56.1(a) requires the party moving for summary judgment to provide a "statement which sets forth material facts as to which there does not exist a genuine issue." Loc. Civ. R. 56.1(a). Plaintiff argues that because Defendants included deposition statements from Defendants and Plaintiff which

contradict each other, Defendants failed to abide by Rule 56.1
and their summary judgment motion must be denied. (Pl. Opp'n to
City of Camden and Frampton at 7.) Plaintiff points to the
following from Defendants' statement of facts as an example of
Defendants' error:

> 38. Unprovoked, Plaintiff then pushed Sgt. Frampton with
> both hands on Sgt. Frampton's chest knocking Sgt.
> Frampton backwards.
> 39. Plaintiff denies pushing Sgt. Frampton.

(Pl. Opp'n to City of Camden and Frampton at 7.)

The Court finds no merit in Plaintiff's argument, or in
their rigid interpretation of Rule 56.1. The purpose of a Rule
56.1 statement is to narrow and clarify the issues for the
Court, see Durkin v. Wabash Nat'l, No. 10-2013, 2013 WL 1314744,
at *6 (D.N.J. Mar. 28, 2013), and to "assist [the court] in
identifying whether material facts are, or are not, in dispute
in a summary judgment motion." Loc. Civ. R. 56.1, Comment 2a.
(2015); see also Caltado v. Moses, 361 F. Supp. 2d 420, 426
(D.N.J. 2004) ("The purpose of a Rule 56.1 statement is to
narrow the issues before the District Court . . . ." (quotations
and citations omitted)). Although Rule 56.1 states on its face
that the moving party should identify "facts as to which there
does not exist a genuine dispute," the comments to the Rule make
clear that disputed facts may also be included. Loc. Civ. R.
56.1, Comment 2a. (2015) (noting that a Rule 56.1 statement

18

"should be clear and unambiguous in specifying the disputed and undisputed issues and facts.") (emphasis added).

In addition, courts in this district have noted that a single joint statement identifying disputed and undisputed facts is preferred. See, e.g., L. Civ. R. 56.1, Comment 2c. (2015) ("Although the rule does not require it, whenever it is possible, a single joint statement of disputed and undisputed facts should be submitted"); Robinson v. Ricci, at *6 (Mar. 29, 2012) (noting preference for a single joint Rule 56.1 statement); Riker v. CMS, Inc., No. 10-1752, 2011 WL 6756953, at *5 (D.N.J. Dec. 22, 2011) (stating same); Milligan v. Sentry Exteriors, Inc., No. 00-2279, 2005 WL 1229791, at *1 n.3 (D.N.J. May 24, 2005) (recommending that parties submit a single Rule 56.1 statement in the future).

Defendants have satisfied the purpose of Rule 56.1 by indicating clearly, through citations to both Plaintiff's and Defendants' testimony, which facts are disputed and which are not. By anticipating and identifying the facts on which the parties disagree, Defendants have made it easier for the Court to identify the pertinent issues in the case. See Allyn Lite, New Jersey Federal Practice Rules, L. Civ. R. 56.1, comment 2 (2015) (Rule 56.1(a) requires parties to submit a statement identifying material facts "in such fashion that the Court can

19

easily determine if a genuine dispute exists."). The Court will accept Defendants' Rule 56.1 statement, and dismissal of Defendants' motion for summary judgment motion is not warranted.

### B. Monell Claims against Defendant the City of Camden (Counts Four and Five)

Plaintiff brings two claims against the City of Camden under Monell. First, he argues that the City of Camden "systematically failed to properly investigate [] complaints and respond to officer misconduct," as demonstrated by the internal affairs files showing a pattern of excessive force by Frampton and Frucci. (Pl. Opp'n to City of Camden and Frampton Br. at 9-10.) He also argues that the City of Camden failed to train and supervise on the use of force and proper arrests. (Id. at 10.)

In Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658 (1978), the Supreme Court established that municipalities and other government entities were "persons" subject to liability under 42 U.S.C. § 1983 for constitutional rights violations, but that they were not liable under the doctrine of respondeat superior for the misconduct of its employees. Monell, 436 U.S. at 690-692; see also City of Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985). To prevail on a Monell claim, a plaintiff must first establish that the municipality had a policy or custom that deprived him of his constitutional rights. McTernan v. City of York, 564 F.3d 636, 657 (3d Cir. 2009)

20

(quoting Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)). In other words, the plaintiff must show that the municipality, through one of its policymakers, affirmatively proclaimed the policy, or acquiesced in the widespread custom, that caused the violation. Watson v. Abington Twp., 478 F.3d 144, 155-156 (3d Cir. 2007). A plaintiff may show the existence of a policy when a decision-maker with final authority issues an official proclamation, policy, or edict. Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). Custom may be established by showing that a given course of conduct, "although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Id.; see also Watson, 478 F.3d at 155-56; Natale v. Camden Cnty. Corr. Fac., 318 F.3d 575, 584 (3d Cir. 2003) (defining "custom" as "'an act that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" (quoting Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997))).

Once a § 1983 plaintiff identifies a municipal policy or custom, he must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Brown, 520 U.S. at 404. If the policy or custom does not facially violate federal law, causation can be

21

established only by "demonstrat[ing] that the municipal action
was taken with 'deliberate indifference' as to its known or
obvious consequences. A showing of simple or even heightened
negligence will not suffice." Id. at 407 (citations omitted);
Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).
For a § 1983 claim of failure to train or supervise municipal
employees, the plaintiff must show that the failure to provide
training or supervision amounted to "'deliberate indifference"
to the rights of persons with whom the employee will come into
contact." Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir.
2014). Deliberate indifference may be demonstrated by showing a
pattern of violations which puts the municipal employee on
notice that a new program is necessary; or a single incident
violation where the need for training was patently obvious. Id.
at 223.[5]

     Citing to Mr. Rivera's report, Plaintiff contends that the
fact that a Frampton and Frucci remained on the police force

---

[5] Proof of the existence of an unlawful policy or custom is not
enough to maintain a § 1983 action. A plaintiff must
additionally prove that the policy or custom was the proximate
cause of the injuries suffered. Watson, 478 F.3d at 156; Losch
v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984). To
establish causation, the plaintiff must demonstrate a "plausible
nexus" or "affirmative link" between the custom and the specific
deprivation of constitutional rights at issue. Bielevicz, 915
F.2d at 850.

despite having a total of 19 excessive force complaints lodged against them prior to this incident demonstrates that the City of Camden was deliberately indifferent to a pattern of excessive force. Plaintiff argues that the City's failure to promptly investigate the large number of civilian complaints also demonstrates its deliberate indifference. (Pl. Br. at 10.) Citing Merman v. City of Camden, 824 F. Supp. 2d 581, 591 (D.N.J. 2010), Defendant argues that without further context or detail about the prior complaints, the evidence is insufficient as a matter of law to demonstrate that the Camden Police Department had a pattern of using excessive force.

In Merman, the plaintiff, who was physically injured and detained by Camden police officers following a concert, brought claims against individual Camden police officers for excessive force, as well as Monell claims against the City of Camden for failure to investigate civilian complaints and failure to supervise or discipline its officers. 824 F. Supp. 2d at 587-88. In support of her Monell claims, the plaintiff provided statistical data from the City's Office of Internal Affairs showing an escalating number of excessive force complaints against police officers over the years, and noted that few of these complaints ever resulted in a finding of misconduct. Plaintiff also pointed to a sample of 40 reports from Internal

Affairs and argued that civilian complaints of excessive force were often inadequately investigated. While the district court noted that "statistical evidence alone may not justify a jury's finding that a municipal policy or custom authorizes or condones the unconstitutional acts of police officers," 824 F. Supp. 2d at 591, the court ultimately held that the plaintiff had presented sufficient evidence from which a reasonable jury could conclude that the City's inadequate investigation into excessive force complaints amounted to deliberate indifference towards foreseeable constitutional violations. Id. at 594.

The Court finds that Plaintiff has provided sufficient evidence from which a reasonable jury could conclude that the City was deliberately indifferent in investigating claims of excessive force. Plaintiff has provided an expert report from Mr. Rivera, who came to similar conclusions after examining civilian complaint files from the Internal Affairs Unit. Mr. Rivera noted that there was a consistent backlog of cases involving alleged officer misconduct that were pending before the IAU, which demonstrated a lack of "standard of care to thoroughly and timely investigate" allegations of abuse. As an example, he noted that in 2009, 227 cases from 2002 had yet to be resolved. (Rivera Report, at 9.) He opined that the Police Department was aware of the backlog but nonetheless failed to

act in a timely manner to investigate complaints. In particular,
Mr. Rivera noted that of the 19 total excessive force complaints
lodged against Frampton and Frucci, two cases against Frampton
dating back to 2005 and two cases against Frucci dating back to
2006 were still awaiting investigation in 2009.[6] (Rivera Report
at 9.)

In addition to the backlog, Mr. Rivera noted that the cases
that were investigated were flawed and poorly investigated, as
demonstrated in part by the low number of disciplinary actions.
Between 2001 and 2007, the Police Department received a total of
485 allegations of excessive force, but only two complaints were
sustained as rule violations. (Rivera Report at 9.) Only 11
allegations of excessive force were investigated in 2001, and
only six allegations of excessive force were investigated in
2002. Mr. Rivera also stated that he reviewed investigative
files for Frampton and Frucci as well as for other officers, and
concluded that the investigators assigned to cases "are not
impartial, do not conduct thorough investigations and inject
opinions and judgments." (Id. at 12.)

Viewing the evidence in light most favorable to Plaintiff,
a reasonable jury could find from this evidence that the City

---

[6] It is unclear whether these cases had been resolved by the time
the present incident occurred.

had a custom of ignoring or failing to properly and promptly
investigate unconstitutional excessive force complaints against
Camden police officers for years preceding this incident, and by
its inaction was deliberately indifferent to the need for such
investigations to protect persons against excessive force during
arrests, and was thus in part complicit in the misconduct that
ensued. See Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d
Cir. 1996) (noting that custom may "be established by evidence
of knowledge and acquiescence"); Monaco v. City of Camden, No.
04-2406, 2008 WL 8738213, at *8 (Apr. 14, 2008) (Simandle, J.)
(failure to investigate plaintiff's excessive force allegation
until nearly three years after incident took place was evidence
of existence of a policy or custom of failing to timely
investigate claims of police misconduct). A reasonable jury
could also find evidence in the record connecting the failure to
investigate with the constitutional violation at issue in this
case. For example, it was Mr. Rivera's opinion, based upon his
examination of the IAU files, that Frampton and Frucci should
have been removed from their positions prior to the incident in
this case due to the frequency and nature of previous complaints
against them (Id. at 9.)[7] See also Monaco, 2008 WL 8738212, at *9

---

[7] Plaintiff notes that he possesses all of the IAU files against
Frampton and Frucci and "can show how the Camden Internal

(reasonable jury could draw a causal connection between plaintiff's injuries at the hands of police officers and municipality's failure to conduct adequate investigations into complaints of police misconduct).

Defendants do not dispute the substance of Mr. Rivera's expert report. They argue only that Mr. Rivera's report failed to detail the specifics of the prior excessive force claims against Frampton and Frucci and does not show how those prior allegations are similar to Plaintiff's excessive force allegations in this case. (Def. Reply at 5-6.) The Court disagrees. To demonstrate the City's knowledge and acceptance of police misconduct, Plaintiff is not required to prove that each prior excessive force complaint "deserved discipline and how the misconduct in those situations was similar to that of Plaintiff." (Def. Reply at 6.) Rather, Plaintiff need only present sufficient evidence that there were numerous allegations of abuse which Defendants knew about and failed to properly investigate. See Beck, 89 F.3d at 973 ("[W]ritten complaints were sufficient for a reasonable jury to infer that [Defendants] knew, or should have known, of [the officer's] violent behavior

---

Affairs department systematically failed to properly investigate the complaints and respond to officer misconduct." (Pl. Opp'n to City of Camden and Frucci Br. at 10.)

in arresting citizens."). Plaintiff has presented expert evidence that the two Defendant officers in this case had previously accumulated 19 complaints against them for use of excessive force; that the officers had been flagged for monitoring and supervision in 2004 and 2005; and that past complaints against the officers had not been timely or properly investigated. (Pl. Opp'n to City of Camden and Frampton Br. at 9, 10, 12.) Mr. Rivera had also examined the underlying IAU files for Frampton and Frucci and concluded that had timely investigations taken place, Frampton and Frucci would have been removed from their position before the events in this case. On this basis, a reasonable jury could conclude that Defendants' failure to investigate amounted to deliberate indifference.

Although the record before the Court contains Mr. Rivera's report but not the IAU investigations and files Mr. Rivera had examined, Mr. Rivera stated that his opinions were based upon a review of the substance of internal investigation files, not just the statistics generated from those files. This Court has, in the past, found expert reports presenting similar evidence sufficient to deny summary judgment on <u>Monell</u> claims, and will do so today. <u>See</u>, <u>e.g.</u>, <u>Malik v. Hannah</u>, 799 F. Supp. 2d 355, 363 (D.N.J. 2011) (Simandle, J.) (entering judgment for plaintiff as a matter of law on <u>Monell</u> claim against City of

28

Camden for having a custom of tolerating excessive force where, among other things, uncontested evidence showed that there were a large number of citizen complaints for excessive force against police officers in the years prior to plaintiff's injury and defendant had a custom of ignoring such violations); D'Arrigo v. Gloucester City, No. 04-5967 2007 WL 1755970, at *13 (D.N.J. June 19, 2007) (Simandle, J.) (denying summary judgment on Monell claim against city for failure to properly investigate and/or discipline officers accused of using excessive force where plaintiff presented evidence showing that no officer had been fired for a disciplinary reason in twenty five years).[8]

It would be a reasonable inference for a jury to find that the City of Camden had a custom of performing inadequate investigations of citizen complaints of police brutality, and which reflected an indifference to the allegedly excessive use of force by its officers. The Court will therefore permit Plaintiff's Monell claim against the City to proceed under a theory that Plaintiff's injuries resulted from the City's failure to conduct timely and meaningful investigations into claims of excessive force.

---

[8] As Mr. Rivera's report appeared to have examined only files from 2009 and prior, Plaintiff should be prepared to prove at trial that the pattern of ignoring excessive force complaints continued beyond 2009.

The Court will, however, dismiss Plaintiff's claim for
failure to train and supervise officers on the use of force and
proper arrests (Count Five). The Supreme Court stated in <u>City of
Canton v. Harris</u> that "[i]n resolving the issue of a city's
liability [for failure to train], the focus must be on adequacy
of the training program in relation to the tasks the particular
officers must perform." 489 U.S. 378, 390 (1989). <u>City of Canton</u>
also teaches that to sustain a claim based on a failure to train
theory, "the identified deficiency in a city's training program
must be closely related to the ultimate injury" and a plaintiff
must prove "that the deficiency in training actually caused the
police officers' indifference to her medical needs." <u>Id.</u> at 391.

Plaintiff has provided no evidence that there was a lack of
training or supervision within the Camden Police Department.
Although Mr. Rivera stated in his report that Defendant failed
to properly train and supervise its officers, his report makes
no mention of what training or supervision was even provided by
the Police Department on arrests and use of force, or the
substance or frequency of the training. Nor has Plaintiff
identified the precise deficiency in training or how the
deficiency contributed to a violation of Plaintiff's
constitutional rights, as required by the Supreme Court and this
Circuit. <u>See</u>, <u>e.g.</u>, <u>Colburn v. Upper Darby Twp.</u>, 946 F.2d 1017,

30

1030 (3d Cir. 1991) (emphasizing that plaintiff "must identify a
failure to provide specific training that has a causal nexus
with his or her injury and must demonstrate that the failure to
provide that specific training can reasonably be said to reflect
a deliberate indifference to whether constitutional deprivations
of the kind alleged occur"); Lapella v. City of Atlantic City,
No. 10-2454, 2012 WL 2952411, at *6 (D.N.J. July 18, 2012)
(Simandle, J.) (to sustain an inadequate training theory,
plaintiff must identify the precise deficiency in training);
Malignaggi v. Cnty. of Gloucester, 855 F. Supp. 74, 77 (D.N.J.
1994) (stating same).  Accordingly, the Court will grant summary
judgment and dismiss Plaintiff's failure to train claim.

### C. Fourth Amendment claims against Defendants Officer Frampton and Officer Frucci

Defendants Frampton and Frucci move for summary judgment on
Counts One, Two, and Three, which asserts claims against them
under 42 U.S.C. § 1983 for excessive use of force, false arrest,
and malicious prosecution. They also invoke qualified immunity,
arguing that all evidence indicates that Defendants acted
reasonably under the circumstances and they must therefore be
immune from suit. (City of Camden and Frampton Br. at 14-16;
Frucci Br. at 5-6.) Reciting a different version of facts,
Plaintiff argues that Defendants are not entitled to qualified
immunity because there was no probable cause to believe

31

Plaintiff had committed any crime; and Defendants' actions in "brutally and maliciously" assaulting Plaintiff clearly violated the Fourth Amendment. (Pl. Opp'n to City of Camden and Frampton Br. at 12-14; Pl. Oppn to Frucci Br. at 2-4.)

The Court will address each Fourth Amendment claim below, turning first to the question of qualified immunity, and, if qualified immunity is to be denied, to the question of whether summary judgment should be granted for the claim.

        1. <u>The qualified immunity analysis requires courts to</u> <u>analyze the facts in light most favorable to the</u> <u>party asserting the injury.</u>

The doctrine of qualified immunity "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009). Under this doctrine, government officials are immune from liability for civil damages as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>Kelly v.</u> <u>Borough of Carlisle</u>, 622 F.3d 248, 253 (3d Cir. 2010). Qualified immunity will not, however, act as a shield for "the official who knows or should know he is acting outside the law." <u>Butz v.</u>

Economou, 438 U.S. 478, 506-07 (1978). In each case, the government's interests must be balanced against the citizens' interest in vindicating their constitutional rights, as well as the public interest in holding officials accountable "when they exercise power irresponsibly." Pearson, 555 U.S. at 231.

The qualified immunity claim is traditionally analyzed in two steps. First, the court must decide whether the facts alleged, taken light most favorable to the plaintiff, makes out the violation of a constitutional right. Saucier v. Katz, 533 U.S. 194, 121 (2001). Next, the court must examine whether the right at issue was "clearly established" at the time of the challenged conduct. To be "clearly established," a right must be sufficiently clear such that a reasonable official would have known that his conduct was unlawful. Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012). Most recently, in Taylor v. Barkes, the Supreme Court emphasized again that while a case directly on point is not required to show that a right was "clearly established," "'existing precedent must have placed the statutory or constitutional question beyond debate.'" 135 S. Ct. 2042, 2044 (2015) (quoting Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011). The two prongs to the qualified immunity inquiry need not be analyzed in sequential order; courts have discretion to decide which of the two prongs to tackle first. al-Kidd, 131

S. Ct. at 2080; Pearson, 555 U.S. at 236.

Before turning to the question of whether Defendants are entitled to qualified immunity on each of Plaintiff's Fourth Amendment claims, the Court notes that much of the qualified immunity dispute in this case turns on which facts the Court is to credit. Defendant's argument is that under their version of events, Defendants acted reasonably under the Fourth Amendment because Frampton and Frucci "at all times utilized the force necessary to gain compliance of Plaintiff." (City of Camden and Frampton Br. at 16.) They also argue that Defendant had probable cause to arrest Plaintiff because Plaintiff pushed Frampton with both hands. (Frucci Br. at 6.) Plaintiff, on the other hand, contends that Defendants maliciously attacked Plaintiff when Plaintiff had committed no crime, and thus their actions clearly violated the Fourth Amendment. (Pl. Opp'n to Frucci Br. at 4.)

At summary judgment, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion. United States v. Diebold, Inc., 369 U.S. 654, (1962) (per curiam); Saucier, 533 U.S. at 201. "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." Scott v. Harris, 550 U.S. 372, 378 (2007). In other words, the inquiry is the following: "Taken in the light most favorable to the party

34

asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right", and that the right was clearly established? <u>Saucier</u>, 533 U.S. at 201.

Although the question of qualified immunity is generally a question of law, "a genuine issue of material fact will preclude summary judgment on qualified immunity." <u>Giles v. Kearney</u>, 571 F.3d 318, 326 (3d Cir. 2009); <u>see also Curley v. Klem</u>, 298 F.3d 271, 278 (3d Cir. 2002) (noting that "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis."). The court must deny summary judgment if on the plaintiff's version of the facts, defendants violated the plaintiff's clearly established constitutional rights. <u>Giles</u>, 571 F.3d at 327 (finding that district court was wrong to dismiss Eighth Amendment claims on qualified immunity grounds because there was a factual dispute as to whether plaintiff had ceased resisting when he was kicked by officers, and court "must accept [the plaintiff's] version of the facts.").

The Court now turns to Plaintiff's Fourth Amendment claims.

   2. <u>Defendants are not entitled to qualified immunity on</u>
      <u>the excessive force claim, and summary judgment on</u>
      <u>that claim is not warranted.</u>

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a

'seizure' occurred and that it was unreasonable." Brower v. County of Inyo, 489 U.S. 593, 599 (1989), quoted in Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999). See also Graham v. Connor, 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard"). "The use of excessive force is itself an unlawful 'seizure' under the Fourth Amendment." Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006).

To determine the reasonableness of a seizure, the court asks whether the officer's conduct was "objectively reasonable" in light of the totality of the circumstances, without regard to the underlying intent or motivation. Graham v. Connor, 490 U.S. 386, 397 (1989) (citing Terry v. Ohio, 392 U.S. 1, 21 (1968)); Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004). The "objective reasonableness" inquiry requires an examination of the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. The Court should not apply "the 20/20 vision of hindsight," but should instead

consider the "perspective of a reasonable officer on the scene." Id.; see also Kopec, 361 F.3d at 777.

Here, Defendants Frampton and Frucci testified that Plaintiff was aggressive from the moment they woke him inside his truck. They testified that they approached the truck to ask Plaintiff if he was all right, but that Plaintiff "aggressively came out of the car," "screaming belligerently, hands in the air flailing around." (Frucci Dep. 54:12-17.) According to Defendants, Plaintiff then shoved Frampton with two hands, which gave Defendants probable cause for arrest, but because Plaintiff fought the officers, Defendants were forced to take him down to the ground. Defendants testified that Plaintiff continued to resist being handcuffed while on the ground, and that they punched his face, arm, leg, ribs, and thigh several times in order to get his hands out from underneath him. They testified that the struggle on the ground lasted approximately 30 seconds, and that they stopped hitting Plaintiff once they placed him in handcuffs.

Plaintiff's version of what happened is markedly different. He testified that he awoke to police officers screaming at him to get out of his truck. He repeatedly asked Frampton and Frucci to identify themselves but they did not. He further testified that despite exiting his truck peacefully with his hands up in

the air, four officers, including Frampton and Frucci, repeatedly kicked and punched Plaintiff in the face and smashed his head into the windshield of his truck while both of Plaintiff's arms were restrained. Plaintiff testified that even after handcuffs were placed on him, the officers slammed him to the ground and continued to kick him while standing on his head, stomach, ribs, back, hands, and feet. He that the assault lasted for about five minutes and he was kicked at least 20 times. Plaintiff disputes that he was resisting arrest at any point and denies ever shoving Frampton.

The summary judgment record consists almost entirely of Plaintiff's testimony and the testimony of Defendants Frampton and Frucci. The contrasting accounts of what happened presents factual issues as to the degree of force actually employed and its reasonableness, and there is no other evidence in the record that clearly supports or contradicts one version of events over the other. This is clearly not a case where Plaintiff's version of events "is so utterly discredited by the record that no reasonable jury could have believed him." Scott v. Harris, 550 U.S. 372, 380 (2007). Viewing the facts in light most favorable to Plaintiff, as this Court must, a reasonable jury could credit Plaintiff's testimony and find that Plaintiff was not resisting arrest during the any part of the encounter; police officers

punched and kicked him while his arms were restrained; and that, after taking Plaintiff to the ground and placing handcuffs on him, officers continued to beat and kick Plaintiff and stand on him for approximately five minutes while Plaintiff was lying on the ground.

Under these set of facts, Defendants' conduct was not "objectively reasonable" and Plaintiff has satisfied the first prong of the qualified immunity analysis.[9] The gratuitous use of force against an arrestee who has already been restrained violates the Fourth Amendment. See Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006) (finding force excessive as a matter of law where plaintiff was not "resisting arrest or attempting to flee" at the time force was used); Robinson v. Andrews, at *9 (Sept. 18, 2014) (denying qualified immunity where officer kicked plaintiff after he was already subdued, handcuffed, and unable to pose any threat to the officer's safety); Weber v. Rodriguez, No. 07-2097, 2011 WL 2555358, at *5 (June 27, 2011) (a reasonable juror could conclude that force used against the plaintiff violated the Fourth Amendment when officers hit him on

_____

[9] Although Defendants' argument with respect to qualified immunity is not a model of clarity, Defendant Frampton appears to concede that the first prong has been met. (Def. City of Camden and Frampton Br. at 16) ("Moving Defendants acknowledge Plaintiff has alleged a deprivation of a constitutional right.").

the head with a baton, punched and assaulted him after they handcuffed and subdued him); Barker v. Keezer, No. 08-1487, 2010 WL 2760728, at *3 (D.N.J. July 8, 2010) (finding that repeatedly smashing the head of a restrained arrestee into the pavement constituted excessive force because such conduct "would appear to serve no purpose other than to inflict bodily harm"); Hurt v. City of Atlantic City, No. 08-3053, 2010 WL 703193 (D.N.J. Feb. 24, 2010) (holding that a beating a plaintiff for six or seven minutes after bringing him to the ground and handcuffing him constitutes excessive force); Brown v. Camden Cnty. Counsel, No. 06-6095, 2007 WL 433326, at *3 (D.N.J. Feb. 2, 2007) (holding that plaintiff may be able to establish that defendant is liable for using excessive force in violation of the Fourth Amendment where he asserts that defendant savagely beat plaintiff, even though plaintiff did not possess a weapon, resist arrest, or attempt to flee).

The Court also finds that the second prong has been satisfied. See Saucier, 533 U.S. at 202 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). At the time Defendants acted, the law was clear that beating an unarmed suspect who was not resisting arrest violates the Fourth

Amendment's prohibition against excessive force. See, e.g.,
Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) ("[A]t the
time of the incident in 2001, it was established that an officer
may not kick or otherwise use gratuitous force against an inmate
who has been subdued."); Blazek v. City of Iowa City, 761 F.3d
920, 925 (8th Cir. 2014) ("It was clearly established in 2009
that when a person is subdued and restrained with handcuffs, a
"gratuitous and completely unnecessary act of violence" is
unreasonable and violates the Fourth Amendment."); Morrison v.
Bd. of Trustees of Green Twp., 583 F.3d 394, 404 (6th Cir. 2009)
("This Court has consistently held in light of the
reasonableness standard that 'use of force after a suspect has
been incapacitated or neutralized is excessive as a matter of
law.'" (quoting Baker v. City of Hamilton, 471 F.3d 601, 607–08
(6th Cir. 2006))); Jennings v. Jones, 499 F.3d 2, 16–17 (1st
Cir. 2007) (holding that reasonable officer should have known
that it was unconstitutional to increase the use of physical
force after an arrestee who has been resisting arrest stops
resisting and warns officers that they are hurting him).

Applying the evidence most favorable to Plaintiff, a
reasonable officer could not have believed that beating an
unarmed man who was not resisting arrest with punches and kicks
while his arms were restrained, slamming him to the ground and

standing on various parts of his body, then kicking him approximately 20 more times while he was lying on the ground, was lawful. See Marshall v. Keansburg Borough, No. 13-533, 2013 WL 6095475, at *7 (D.N.J. Nov. 20, 2013) ("[N]o reasonable office in the Defendant Officers' positions would have believed that that throwing Plaintiff into their police vehicle, kicking Plaintiff's legs out from him, tackling Plaintiff to the ground, kneeing Plaintiff in his ribs and back, and choking Plaintiff was a lawful, reasonable amount of force to use under the circumstances."). It would have been clear to a police officer making an arrest that once Plaintiff no long posed a risk of harm to police officers, the continued beating was excessive and unconstitutional. Defendants Frampton and Frucci are not entitled to qualified immunity.[10]

Defendants separately seek summary judgment on the claim of excessive force, an argument the Court readily rejects. As

_____

[10] The Court readily rejects Defendants' argument that "the officers acted in good faith and are entitled to qualified immunity." (Def. City of Camden and Frucci Br. at 16.) The qualified immunity inquiry does not turn on Defendants' good faith, and an inquiry into whether individual officers acted in "good faith" "is incompatible with a proper Fourth Amendment analysis," and has no bearing on whether a particular seizure was "unreasonable." Graham v. Connor, 490 U.S. 386, 397 (1989); see id. ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.").

discussed above, there is a material dispute over whether
Defendants used gratuitous force against Plaintiff and whether
Plaintiff was resisting arrest. Since a reasonable juror could
credit Plaintiff's version of the facts and find that
Defendants' conduct violated the Fourth Amendment, summary
judgment is not warranted. Plaintiff's excessive force claim
(Count One) may proceed.

> 3. <u>Defendants are not entitled to qualified immunity on</u>
> <u>the false arrest claim, and summary judgment is not</u>
> <u>warranted on the false arrest and malicious</u>
> <u>prosecution claims (Counts Two and Three)</u>

In analyzing the qualified immunity defense to a claim of
false arrest,[11] the first step is to determine whether Plaintiff
has alleged a deprivation of an actual constitutional right. An
"arrest without probable cause is a constitutional violation"
and gives rise to a cause of action for false arrest under 42
U.S.C. § 1983. <u>Patzig v. O'Neil</u>, 577 F.2d 841, 848 (3d Cir.
1978); <u>see also</u> <u>O'Connor v. City of Philadelphia</u>, 233 Fed. App'x
161, 164 (3d Cir. 2007). The Third Circuit has held that courts

---

[11] Although Defendants' brief is unclear, Defendant Frucci
appears to make some argument that he is entitled to qualified
immunity on the claim of false arrest. (<u>See</u> Frucci Br. at 6)
(contending, in qualified immunity section, that Defendant "had
probable cause to arrest the Plaintiff" when Plaintiff pushed
Frampton with both hands). The Court will therefore address the
issue of qualified immunity.

must apply a "common sense approach," based on the totality of the circumstances, to determine whether there was probable cause to arrest. Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000). The inquiry is essentially one of reasonableness: "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 153 (2004); see also Maryland v. Pringle, 540 U.S. 366, 371 (2003). Put another way, a defendant officer violates an individual's Fourth Amendment right to be free from false arrest if it was not objectively reasonable for the officer to believe that probable cause existed at the time of the arrest. Johnson ex rel. Johnson v. City of Pleasantville, No. 05-4258, 2007 WL 1412271, at *4 (D.N.J. May 14, 2007) (Simandle, J.). Defendants are entitled to qualified immunity "if a reasonable officer could have believed that probable cause existed" to arrest Plaintiff "in light of clearly established law and the information the [arresting] officers possessed." Hunter v. Bryant, 502 U.S. 224, 228-29 (1991); Anderson, 483 U.S. at 641; Blaylock v. City of Philadelphia, 504 F.3d 405, 411 (3d Cir. 2007).

Whether Defendants had probable cause to arrest Plaintiff is squarely in dispute in this case. Defendants hinge their

44

argument on the fact that probable cause was established when Plaintiff pushed Frampton. (See Frucci Br. at 6) ("When Defendant Frampton came on to the scene, the Plaintiff pushed him with both hands on the chest. At that point Defendants had probable cause to arrest the Plaintiff.") At deposition, Frampton and Frucci testified that the initial basis for arresting Plaintiff was Plaintiff's alleged shove. Specifically, Frucci testified that after Plaintiff gave Frampton a two-handed push to the chest, "at that point, I told [Plaintiff] he was under arrest and . . . tried [to] . . . place him in handcuffs." (Frucci Dep. 61:15-62:9.) Frampton similarly testified that "[a]t that point [after being pushed], Frucci and I attempted to place [Plaintiff] under arrest for assault." (Frampton Dep. 57:1-2.) Plaintiff, however, denies that he ever pushed or shoved Frampton. He insists, in other words, that the event which gave rise to probable cause for his arrest never happened.

Viewing the evidence in light most favorable to the Plaintiff, there is a genuine dispute whether Plaintiff's conduct reasonably gave Defendants probable cause to arrest him. According to Plaintiff, Defendants approached his truck and yelled at him to get out of his vehicle, and, after Plaintiff stepped out of his truck with hands raised, Frampton initiated physical contact by grabbing Plaintiff's arm. Plaintiff

45

testified that officers then began hitting and punching him, and at some point handcuffs were placed on him. Under Plaintiff's set of facts, it was not objectively reasonable for Defendants to believe that probable cause existed because there was no basis to suspect that Plaintiff had committed or was about to commit a crime. See Beck cv. Ohio, 379 U.S. 89, 91 (1964) (noting that arrest without warrant is constitutionally valid if "at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."). Indeed, Defendants all but conceded at deposition that they did not suspect Plaintiff of drinking or committing any unlawful activity when they approached his truck and before Plaintiff allegedly shoved Frampton. Defendants did not smell alcohol on his breath or notice anything in or around his truck that aroused suspicion. They did not ask to see Plaintiff's license or registration number. (See Frucci Dep. 46:11-15, 53:15-11; Frampton Dep. 45:17-20.)[12]

---

[12] Defendant Frampton appears to argue that probable cause existed because Plaintiff was resisting arrest. (See City of Camden and Frampton Br. at 16-17) (noting that "Plaintiff existed his vehicle and did not allow himself to be handcuffed"

At the time Defendants acted, it was clearly established that probable cause for arrest does not exist where the circumstances do not suggest that an individual had committed or was about to commit a crime. Reasonable officials in Defendants' position would have understood that their actions violated Plaintiff's rights. Defendants are not entitled to qualified immunity. See Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009); Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002) (noting that "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis.").

Defendants also move for summary judgment on the false arrest claim. As discussed above, there is a genuine material dispute whether Plaintiff's conduct gave rise to probable cause for an arrest. Resolution of this issue requires a credibility

_____

and that "probable cause existed to arrest Plaintiff based upon said facts. It is undisputed that Plaintiff would not allow either officer to handcuff him after he exited the van."). However, in order for the police to have properly arrested Plaintiff, they must have had probable cause for the initial arrest on the aggravated assault. As the Third Circuit has observed, a "resisting arrest charge "[cannot] provide[] probable cause for the arrest ab initio." Groman v. Twp. of Manalapan, 47 F.3d 628, 635 (3d Cir. 1995); see also Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 436 (D.N.J. 2011) (holding that disorderly conduct, assault, and resisting arrest cannot provide justification for Plaintiff's initial arrest because they "all arose either during or after Plaintiff's arrest.").

47

determination that this Court cannot make at this stage,
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and
the evidence is not so clearly one-sided that a jury must find
in favor of one party, especially after giving Plaintiff the
benefit of all justifiable inferences. Defendants are not
entitled to summary judgment.

The Court will also permit Plaintiff's malicious
prosecution claim to proceed because the factual dispute
identified above also prevents summary judgment on this claim.[13]
To prove the constitutional tort of malicious prosecution, the
plaintiff must show that (1) the defendants initiated a criminal
proceeding; (2) the criminal proceeding ended in the plaintiff's
favor; (3) the proceeding was initiated without probable cause;
(4) the defendants acted maliciously or for a purpose other than
bringing the plaintiff to justice; and (5) the plaintiff
suffered a deprivation of liberty consistent with the concept of
"seizure." Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007);
Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 791 (3d Cir.
2000); Gallo v. Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998).

―――――――――――――――――

[13] Defendant Frucci does not address the malicious prosecution
claim in his brief. Defendant Frampton seeks summary judgment on
the malicious prosecution claim but does not assert a qualified
immunity defense. (See City of Camden and Frampton Br. at 16-
17.)

In moving for summary judgment on this claim, Defendants argue only that the third and fourth prongs have not been met, because probable cause existed based upon the summary judgment record, and Defendants did not act maliciously "in their brief interaction with Plaintiff." (City of Camden and Frampton Br. at 17.) The Court does not agree.

First, the same factual dispute that precluded summary judgment on Plaintiff's false arrest claim also precludes this Court from finding that Defendants had probable cause to bring charges against Plaintiff for aggravated assault. See Brockington v. City of Philadelphia, 354 F. Supp. 2d 563, 569-70 (E.D. Pa. 2005) (denying summary judgment on malicious prosecution claim and false arrest claim brought under 42 U.S.C. § 1983 because genuine issue of fact existed as to whether officer had probable cause to arrest plaintiff). Similarly, because Plaintiff testified repeatedly that he never resisted arrest, factual issues also remain as to whether the resisting arrest charge was brought with probable cause. With respect to the question of whether Defendants acted with malice, a reasonable jury could find, viewing the evidence in light most favorable to Plaintiff, that Defendants brought the charges against Plaintiff when Plaintiff did not assault either officer and did not resist arrest. A reasonable jury could therefore

49

conclude that in bringing the charges without probable cause, Defendant acted for a purpose other than to bring Plaintiff to justice. See Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998) (reversing grant of summary judgment on malicious prosecution charge and noting that summary judgment on that claim is "only appropriate if . . . resolving all inferences in [plaintiff's] favor, a reasonable jury could not find a lack of probable cause for [plaintiff's] stop and arrest."); Brockington, 354 F. Supp. 2d at 570 (because the facts suggested that defendant falsified a probable cause finding, a "natural conclusion" was that defendant acted with malice).

Accordingly, the Court will deny summary judgment on the malicious prosecution claim and allow it to proceed to trial.

### D. The state law claims against Defendants must be dismissed for failure to comply with the NJTCA's notice of claim requirement

The New Jersey Tort Claims Act ("NJTCA") requires notice of a claim of injury against a public entity to be presented within ninety days of the accrual of a cause of action. See N.J.S.A. 59:8-3 ("No action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure

set forth in this chapter.")[14] After the notice of claim is filed, a plaintiff must wait six months before filing suit against the public entity or employee in an appropriate court. Id. A plaintiff is forever barred from recovering damages from a public entity if "he fail[s] to file his claim with the public entity within ninety (90) days . . . ." N.J.S.A. 59:8-8.

Providing such notice within 90 days achieves several goals. It allows the public entity time to review the claim and to promptly investigate the facts and prepare a defense; provides them an opportunity to settle meritorious claims before bringing suit; grants them an opportunity to correct the conditions which gave rise to the claim; and allows them to inform the State in advance as to the expected liability. Velez v. City of Jersey City, 850 A.2d 1238, 1242 (N.J. 2004); see also N.J.S.A. 59:8-3, Comment.

---

[14] The NJTCA sets forth the procedures a claimant must follow before bringing a tort claim against the state, or, as is relevant here, a "local public entity." N.J. Stat. Ann. § 59:1-1 et seq. The notice of claim must be presented to the Attorney General or the agency involved in the alleged wrongful act and must include, among other things, (1) the name and address of the claimant; (2) the address for sending communication about the claim (2) the date, place, and other circumstances of the occurrence which gave rise to the claim; (3) a general description of the known injury, damage, or loss incurred "so far as it may be known at the time"; (4) the name of the public entity, employee, or employees causing the injury; and (5) the amount claimed as of the date of presentation of the claim. N.J.S.A. 59:8-4.

Because Plaintiff concedes that a notice of claim was never filed before Plaintiff filed suit in this court, the Court is barred by N.J.S.A. 59:8-8 from considering Plaintiff's state tort claims. See, e.g., Guzman v. City of Perth Amboy, 518 A.2d 758, 760-61 (N.J. Super. Ct. App. Div. 1986) (holding that plaintiff's claims were barred because plaintiff failed to comply with the notice requirement under N.J.S.A. 59:8-8); Pinckney v. Jersey City, 355 A.2d 214, 215 (N.J. Super. Ct. Law Div. 1976) (holding that plaintiff's NJTCA claims were barred by the express terms of N.J.S.A. 59:8-8 because plaintiff failed to file a claim within 90 days and failed to move within one year to file a late notice of claim).

Plaintiff's argument, that the notice requirement does not reach actions by public employees classified under N.J.S.A. 59:3-14 as actions constituting a crime, actual fraud, actual malice, or willful misconduct, has been squarely rejected by the New Jersey Supreme Court. See Velez, 850 A.2d at 1256 (holding that the NJTCA's notice requirements apply to conduct described in N.J.S.A. 59:3-14); see also Davis v. Twp. of Paulsboro, 371 F. Supp. 2d 611, 619 (D.N.J. 2005) (citing Velez and noting that the notice of claim provisions apply to causes of action based on the intentional conduct of public employees).

The Court must also reject Plaintiff's argument that the

52

claims did not accrue until June 21, 2013, after the criminal charges against Plaintiff were dismissed, and that Plaintiff's filing of a complaint in this court satisfies the notice requirement. As the New Jersey Supreme Court held in Beauchamp v. Amedio, 751 A.2d 1047, 1052 (N.J. 2000), "[T]he notice [requirements are] triggered by the occurrence of injury and [notice] must be filed in order for a complaint to be lodged against the public entity." Plaintiff's claims accrued on January 26, 2012, the date on which the incident occurred. See Beauchamp, 751 A.2d at 1052 ("A claim accrues on the date of the accident or incident that gives rise to any injury, however slight, that would be actionable if inflicted by a private citizen"); Cliett v. City of Ocean City, No. 06-4368 2007 WL 2459446, at *3 (D.N.J. Aug. 24, 2007) (Simandle, J.) ("[T]he accrual date of a claim is the date on which the alleged tort is committed or the negligent action or omission occurred."). Even if Plaintiff's claim accrued on the date the criminal charges were dismissed, the filing of the Complaint in this case does not satisfy the notice requirement. See Guzman, 518 A.2d at 760 ("[T]he filing of a complaint would not be a substitute for the notice required by statute, whether the complaint was filed within the 90-day or the one-year period."); Baker v. Allen, No. 03-2600, 2006 WL 1128712, at *16 (D.N.J. Apr. 24, 2006) ("Strict

53

compliance is required to satisfy the Tort Claims Act, and the filing of a complaint is not a substitute for a notice of claim.").

Although Plaintiff has not moved to file a late notice of claim, the Court notes that it has no discretion to grant him the opportunity to do so. The NJTCA states that a claimant who fails to file a notice of claim within 90 days "may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby." N.J.S.A. 59:8-9. In other words, N.J.S.A. authorizes the court, in its discretion, to extend the time for filing a notice of claim to a period not exceeding one year following accrual of the cause of action. Here, however, Plaintiff's claim accrued on January 26, 2012, and the one-year limitation expired on January 26, 2013. "After the one-year limitation has passed, 'the court is without authority to relieve a plaintiff from his failure to have filed a notice of claim, and a consequent action at law must fail.'" Pilonero v. Twp. of Old Bridge, 566 A.2d 546, 548 (N.J. Super. Ct. App. Div. 1989) (quoting Speer v. Armstrong, 402 A.2d 963, 965 (N.J. Super. Ct. App. Div. 1979)); see also Anaya v. Vernon Twp., 354 A.2d 338, 340 (N.J. Super. Ct. App.

Div. 1976) (noting that court had no authority to permit filing of late notice of claim because notice was filed more than one year after date on which claim accrued), certif. denied, 366 A.2d 650 (N.J. 1976).

Because Plaintiff did not file a notice of claim pursuant to N.J.S.A. 59:8-8, Plaintiff's state law claims (Counts Six through Ten) are barred and will be dismissed with prejudice.

**IV. CONCLUSION**

For the foregoing reasons, the Court will deny summary judgment on Plaintiff's Fourth Amendment claims against Frampton and Frucci (Counts One, Two, and Three), deny summary judgment on the Monell claim against the City of Camden for failure to investigate the use of excessive force (Count Four), and grant summary judgment on all other claims. The accompanying Order will be entered.

**June 29, 2015**                          **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           Chief U.S. District Judge